# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 17-1755V
Filed: March 25, 2025

```
* * * * * * * * * * * * *  *
IGNACIO VAZQUEZ,            *
                            *
            Petitioner,     *
v.                          *
                            *
SECRETARY OF HEALTH         *
AND HUMAN SERVICES,         *
                            *
            Respondent.     *
* * * * * * * * * * * * *  *
```

*Stephanie Rubin, Esq.,* Rubin & Machado, Ltd., Chicago, IL, for petitioner.
*Debra Begley, Esq.*, U.S. Dept. of Justice, Washington, DC, for respondent.

### RULING ON PROOF OF VACCINATION[1]

**Roth,** Special Master:

On November 18, 2017, Ignacio Vazquez ("petitioner") filed a petition for compensation in the National Vaccine Injury Compensation Program ("the Program"),[2] alleging that the influenza ("flu") vaccine he received on December 6, 2014, caused him to suffer from Guillain-Barré Syndrome ("GBS"). Petition, ECF No. 1

On January 10, 2022, petitioner filed a Motion for Ruling on the Record on proof of vaccination. ECF No. 58. After carefully analyzing and weighing the evidence presented in this case in accordance with the applicable legal standards, I find that petitioner has submitted sufficient proof of vaccination to satisfy the Vaccine Act's requirement.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 *et seq.* (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

I.   **Procedural History**

The petition and accompanying medical records were filed on November 8, 2017. Petition, Petition, ECF No. 1; Petitioner's Exhibits ("Pet. Ex.") 1-13, ECF No. 4. The case was assigned to the Special Processing Unit ("SPU"), and an initial status conference was held on January 23, 2018. ECF Nos. 5-6, 10. During the status conference, issues associated with proof of vaccination were raised. ECF No. 10. Thereafter, petitioner filed additional medical records and a statement of completion on April 6, 2018. Pet. Ex. 14-15, ECF Nos. 11-12.

Respondent filed his Rule 4(c) Report on October 31, 2018, recommending against compensation. Respondent detailed issues regarding proof of vaccination and petitioner's failure to meet the criteria for a Table GBS claim as alleged. ECF No. 19. The case was then reassigned to the undersigned. ECF Nos. 20-21.

A status conference was held on May 8, 2019, to discuss petitioner's medical records, and the inconsistencies in his physician's records and petitioner's affidavits regarding proof of flu vaccination and the onset of symptoms. Outstanding records were also noted. ECF No. 23.

Petitioner filed additional medical records on August 13, 2019; January 29, 2020; and June 22, 2020. Pet. Ex. 16-19, ECF No. 25; Pet. Ex. 20-26, ECF No. 29; Pet. Ex. 27-28, ECF No. 37. Respondent filed a status report on August 6, 2020, questioning whether petitioner received the allegedly causal flu vaccine at Dr. Lima's office. ECF No. 39. Petitioner filed insurance records on November 3, 2020 and a status report detailing why he believed the insurance and billing records filed supported his receipt of the flu vaccine in Dr. Lima's office. Pet. Ex. 29-30, ECF Nos. 42-43.

On January 15, 2021, respondent filed a status report and other documentation detailing why petitioner had failed to provide proof that he received a flu vaccination as alleged in petitioner's November 3, 2020 filing. ECF No. 46; Respondent's Exhibit ("Resp. Ex. A"), ECF No. 47.

A status conference was held on March 2, 2021. At that time, respondent expressed his reasons for why none of the documents filed by petitioner supported his receipt of a flu vaccine on December 6, 2014. Petitioner responded that his physician's office had been uncooperative with requests for clarifying affidavits. It was suggested that petitioner serve a subpoena requesting more specific documentation. ECF No. 48.

Petitioner filed a Motion to Issue Subpoena on March 9, 2021, and filed the records received in response thereto from the doctor's office on April 30, 2021. Pet. Ex. 31, ECF Nos. 49-51. Petitioner filed a status report on June 7, 2021, citing to Dr. Lima's vaccine chart and petitioner's supplemental affidavit as proof of vaccination. ECF No. 54.

In a status report filed on July 7, 2021, respondent detailed the continued inconsistencies between petitioner's affidavits and the medical records, requesting that the petition be dismissed due to insufficient documentation to prove that petitioner received the flu vaccine on December 6,

2014. Respondent requested either the issuance of an Order to Show Cause or a status conference to determine how to proceed. ECF No. 55.

A status conference was held on September 30, 2021. Petitioner's counsel advised that petitioner had filed all available proof that he could in support of his receipt of a flu vaccine on December 6, 2014 in Dr. Lima's office. Further, petitioner's counsel advised that deposing Dr. Lima would likely be unfruitful. Petitioner requested to file a Motion for Ruling on the Record regarding proof of vaccination, and respondent agreed. ECF No. 56.

Petitioner filed his Motion for Ruling on the Record on January 10, 2022. Motion, ECF No. 58. Respondent filed a response on April 25, 2022. Response, ECF No. 60. Petitioner then filed a reply on June 2, 2022. ECF No. 62.

This matter is now ripe for ruling.

## II.     Factual Background

### A. Petitioner's Medical History

Petitioner's medical history after December 6, 2014 is extensive. However, since this ruling only addresses the issue of proof of vaccination, only the medical records relevant to that issue will be detailed. The content of this ruling in no way reflects any opinions regarding petitioner's medical conditions, the cause of those conditions, or the onset of those conditions.

Petitioner's pre-vaccination medical history is significant for hyperlipidemia, hypertension, and diabetes mellitus that was at times noted as uncontrolled. *See generally* Pet. Ex. 2. He also has a history of chronic joint pain, specifically in the knees, shoulders, and back. *Id*. at 44-46, 50, 59-61.

Petitioner presented to Dr. Lima on December 6, 2014, for follow-up of his chronic conditions and complaints of a cough for two weeks that was unresponsive to over-the-counter medication. He also reported wheezing at night and shortness of breath. Pet. Ex. 2 at 8-9; Pet. Ex. 31. He was diagnosed with acute bronchitis and prescribed an antibiotic. Pet. Ex. 2 at 9. The record noted "need for prophylactic vaccination and inoculation against streptococcus pneumoniae [pneumococcus]", and documented petitioner's receipt of a Pneumovax 23 vaccine in his right deltoid along with the lot number, manufacturer, and expiration date for the Pneumovax 23. *Id*.

> PROVIDED VACCINATION 1 dose of Pneumovax 23, 0.5 ml IM in the Right Deltoid (Mfg: MERCK lot no. K010466, expires 03/23/2016)

A flu vaccine was documented as "[g]iven [e]lsewhere . . . at work." Pet. Ex. 2 at 9.

> PROVIDED VACCINATION (Given Elsewhere) Influenza, at work
> Medium Complexity > 99215 25, 36415 , 90732 , 90471 , 94010

3

Petitioner returned to Dr. Lima on December 16, 2014, with complaints of severe cold symptoms, fever, headaches, general malaise, coughing, chest tightness, wheezing, and congestion over the past four days. Pet. Ex. 2 at 7. Petitioner was diagnosed with influenza with other respiratory manifestations and acute bronchospasm. Tamiflu and cough syrup were prescribed. *Id*.

On December 22, 2014, Dr. Lima's office contacted petitioner with his blood test results. His blood sugar was not optimally controlled, and he was to continue with a stricter diet, take medication as directed, and follow up in three months. Pet. Ex. 2 at 14.

On January 4, 2015, petitioner presented to the emergency room ("ER") at Presence Saint Mary of Nazareth Hospital ("St. Mary's") with complaints of bilateral thigh numbness with a tingling sensation and weakness for three weeks, along with left flank and left posterior forearm numbness and tingling. He vomited once yesterday. He attributed his symptoms to a pneumonia vaccine three weeks ago. Pet. Ex. 8 at 3. He was admitted and evaluated by neurologist Dr. Chappidi. The admitting diagnosis was "possible peripheral neuropathy with sciatica and ulnar nerve." *Id*. Dr. Chappidi's initial impression was "Acute Neuropathy / Transverse Myelitis – Inflamatory Etilogy (sic) ?" with a differential diagnosis of diabetic peripheral neuropathy. *Id*. at 27. An MRI of the cervical spine showed degenerative arthritis with no evidence of active spinal cord edema. *Id*. at 3, 19-20. A lumbar puncture revealed albumino-cytological dissociation, and Dr. Chappidi's assessment was "[a]cute [n]europathy-GBS." *Id*. at 14, 39, 43. Petitioner was treated and discharged on January 13, 2015, with a final diagnosis of acute infective polyneuritis. *Id*. at 4.

At a January 26, 2015 follow-up visit with Dr. Chappidi, petitioner reported continued issues associated with his illness. Dr. Chappidi documented that petitioner's hospitalization "occurred one month after receiving the influenza vaccine." Pet. Ex. 6 at 2. Dr. Chappidi's assessment was GBS, and petitioner was instructed to continue physical therapy. It was also recommended that he avoid the flu vaccine. *Id*. at 3.

Petitioner followed up with Dr. Lima on January 15, 2015, January 23, 2015, and January 27, 2015, with continuing complaints of leg numbness, neuropathy, and low back pain. GBS was noted. He was unable to work without restrictions. Pet. Ex. 2 at 3-5.

Petitioner presented to a new primary care physician, Dr. Salvador Gutierrez, on February 13, 2015. Pet. Ex. 3 at 2. The record documents a hospitalization on January 4, 2015, for acute infective polyneuritis that petitioner "feels it may have all started after getting his Flu/Pneumonia shot last 12/2014." *Id*. Petitioner was unable to return to work due to continued leg weakness and gait instability. He was advised to continue home exercises. *Id*. at 3.

On May 14, 2015, petitioner presented to the ER at Advocate Illinois Masonic Medical Center ("Advocate") for persisting neurologic deficits. Pet. Ex. 9 at 23. Following imaging, the record documented "likely transverse myelitis, demyelination, spinal stenosis." *Id*. at 26. Petitioner was discharged with diagnoses of paresthesia, failure to thrive, chronic constipation, and CNS demyelinating disorder. He was instructed to follow-up with his PCP and a neurologist for further care. *Id*. at 28.

4

Petitioner continued to treat with Dr. Gutierrez and Dr. Chappidi and received therapy without improvement. Pet. Ex. 3 at 9-22; Pet. Ex. 6 at 4-5.

Petitioner was hospitalized several times in 2016 for generalized weakness, severe spinal stenosis with spinal cord demyelination, and a history of GBS possibly occurring after a flu vaccine approximately one year ago. *See* Pet. Ex. 8 at 362-63, 390, 1001; Pet. Ex. 10 at 4.

On August 1, 2016, petitioner presented to a new neurologist, Dr. Jeffrey Yu, for polyneuropathy and a history of GBS. Pet. Ex. 7 at 2. He reported onset of tingling and numbness spreading up his legs to his waist after a flu vaccine. He continued to have symptoms. *Id*. at 2-3. Dr. Yu suspected that the "majority of [petitioner's] symptoms with his lower back and leg pains are secondary to his cervical disc herniations." *Id*. at 3-5.

On January 26, 2017, petitioner was evaluated by Dr. Dagoberto Camacho to establish care for bilateral leg immobility and pain for the past two years. He reported a history of GBS and nerve damage after he received the flu and pneumonia vaccine at the same time. Pet. Ex. 5 at 4-7.

B. **Vaccination Records**

Petitioner filed two vaccination records from Dr. Lima's office. Pet. Ex. 2 at 68; Pet. Ex. 14. The first record was included as part of Dr. Lima's office records and is a chart which includes Fluvirin and Pneumovax 23 vaccines with a date of December 6, 2014 under a column labeled "Dose 1." The chart also includes recommendations and screenings, but the information associated with those entries is cut off. Pet. Ex. 2 at 68.

|  | Dose 1 | Dose 2 | Dose 3 | Dose 4 |
|---|---|---|---|---|
| Behavioral Counseli | 02/23/2013 | | | |
| BOOSTRIX | 12/20/2011 | | | |
| Fluarix | 12/21/2011 | | | |
| Fluvirin | 02/23/2013* | | | |
| Fluvirin | 12/06/2014 | | | |
| Pneumovax 23 | 12/06/2014 | | | |
| Recommendations f | 12/21/2011 | 02/23/2013 | 08/12/2014 | |
| Recommendations f | 12/21/2011 | 02/23/2013 | 08/12/2014 | 12/06/2014 |
| Screening for Colore | 02/23/2013 | | | |
| Screening for Diabet | 12/21/2011 | 02/23/2013 | 08/12/2014 | |
| Screening for Diabet | 12/21/2011 | 02/23/2013 | 08/12/2014 | |
| Screening for Diabet | 02/23/2013 | 12/06/2014 | | |
| Screening for High E | 12/21/2011 | 08/12/2014 | | |
| Screening for Lipid L | 08/12/2014 | | | |
| Screening for Lipid L | 12/06/2014 | | | |

The second record is a chart that includes three entries for influenza vaccine: two vaccinations received in the past and one received on December 6, 2014, listed under a column labeled "Dose 3." Next to the entry for "Dose 3" is a handwritten note that lists "Lot# 1411101 Exp. 4/1/15 Manufacturer: Novartis." Pet. Ex. 14. The Pneumococcal 23 vaccine for December 6, 2014 is listed under the "Dose 1" column with no accompanying information regarding the lot number, expiration date, or manufacturer. This chart, like the one referenced above, has information that is cut off. *Id*. At the bottom of the document there is an illegible signature near "Printed by Alex Lima, MD, 2/5/2018 3:29 PM      *Refused*", which is typed. There appears to be a blank space between "PM" and "*Refused*." *Id*.

5

|  | Dose 1 | Dose 2 | Dose 3 | Dose 4 |
|---|---|---|---|---|
| Tdap | 12/20/2011 | | | |
| Screening for Diabet | 12/21/2011 | 02/23/2013 | 08/12/2014 | |
| Screening for Diabet | 12/21/2011 | 02/23/2013 | 08/12/2014 | |
| Recommendations fc | 12/21/2011 | 02/23/2013 | 08/12/2014 | 12/06/2014 |
| Recommendations fr | 12/21/2011 | 02/23/2013 | 08/12/2014 | |
| Influenza | 12/21/2011 | 02/23/2013 | 12/06/2014 Lot# 3411101 Exp 4/17/15 Manufacturer: NOVRIS | |
| High Blood Pressure | 12/21/2011 | 08/12/2014 | | |
| Screening for Diabet | 02/23/2013 | 12/06/2014 | | |
| Colorectal Cancer: S | 02/23/2013 | | | |
| Behavioral Counseli | 02/23/2013 | | | |
| Screening for Lipid [ | 08/12/2014 | | | |
| Pneumococcal-23 va | 12/06/2014 | | | |
| Screening for Lipid [ | 12/06/2014 | | | |

Printed By: ALEX LIMA, MD 2/5/2018 3:29:24 PM    *Refused

### C. Insurance Records

Petitioner filed records from his insurance company, BlueCross BlueShield. *See* Pet. Ex. 11; Pet. Ex. 18; Pet. Ex. 19; Pet. Ex. 29.

Petitioner's Exhibit 11 is an untitled record represented to be from BlueCross BlueShield. Multiple line items are entered for Dr. Lima for December 6, 2014, including billing codes of 99215, 94010, 36415, 90732, and 90471. Pet. Ex. 11 at 2. Petitioner highlighted billing code 90471 and the accompanying charge of $30.00 purportedly reflecting the flu vaccine. *Id*.

Petitioner also filed a health insurance claim form for the services provided at Dr. Lima's office on December 6, 2014 that contain the same five billing codes. Pet. Ex. 29 at 2.

Petitioner filed an article from the American Academy of Pediatrics news magazine titled "Influenza coding for the 2013-'14 season." Pet. Ex. 30. The article states that billing code 90471 refers to immunization administration, "one vaccine (single or combination vaccine/toxoid)." It also contains codes 90656 and 90658 for Fluvirin.[3] The article explains that "[a]s with all vaccines, report the appropriate immunization administration code in addition to the vaccine product code." *Id*.

Petitioner also filed an Explanation of Benefits and billing summary from BlueCross BlueShield. Pet. Ex. 18; Pet. Ex. 19. There are no services for December 6, 2014 contained in Explanation of Benefits. Pet. Ex. 18. However, the billing summary included services for December 6, 2014, with two entries for "Immunizations" billed, one for $100.00 and one for $30.00. Pet. Ex. 19 at 45-46.

### D. Dr. Lima's Billing Records

Petitioner filed Dr. Lima's billing statement for services charged to petitioner and his insurance company. Pet. Ex. 27. The entry for December 6, 2014 includes insurance

---

[3] The vaccine record chart filed within Dr. Lima's records lists Fluarix Dose 1 on 12/21/11, Fluvirin Dose 1 on 2/23/13, and Fluvirin Dose 1 on 12/6/14. Pet. Ex. 2 at 68. The vaccine record chart filed separately lists only "Influenza" vaccine, with Dose 1 on 12/21/2011, Dose 2 on 2/23/2013, and Dose 3 on 12/6/2014. Pet. Ex. 14.

6

reimbursement for an office visit ($200.00), pneumococcal polysaccharide 23 vaccine ($100.00), immunization "administration" for vaccines/toxoids ($30.00), collection of venous blood by venipuncture ($10.00), and spirometry test ($100.00). *Id.* at 4; *see* Pet. Ex. 2 at 9. There is no entry for a flu vaccine contained in the record for December 6, 2014.

### E. Petitioner's Affidavits

Petitioner's initial affidavit affirms only that he has never filed a claim in this court before, has no civil action pending for damages and has not received compensation regarding this case. Pet. Ex. 13.

Petitioner filed a supplemental affidavit[4] on April 5, 2018, affirming the receipt of flu and pneumonia vaccinations at his visit with Dr. Lima on December 6, 2014. Pet. Ex. 15 at 1.

### F. Explanations of Billing Codes Provided by the Parties

In a status report filed on November 3, 2020, petitioner pointed to the $30.00 charge on December 6, 2014, with the code "90471" as proof of his receipt of the flu vaccine. ECF No. 43 at 1 (citing Pet. Ex. 29). He proposed that the article he filed, "Influenza coding for the 2013-'14 season", identifies the various codes used for influenza vaccines and included the code "90471." ECF No. 43 at 1 (citing Pet. Ex. 29; Pet. Ex. 30). Further, both Dr. Lima's billing record and the BlueCross BlueShield insurance claim form for December 6, 2014 included the $100.00 charge for the pneumococcal vaccine. ECF No. 43 at 1 (citing Pet. Ex. 27 at 4; Pet. Ex. 29 at 2). Therefore, the records show "there are clearly charges for two vaccines, influenza and pneumococcal given at Dr. Lima's office on 12/6/2014 with charges showing these vaccinations in both Exs. 27 and 29." ECF No. 43 at 1. Further, Dr. Lima's vaccine chart also documents both the influenza and pneumococcal vaccines being given on December 6, 2014. Finally, petitioner affirmed receipt of both vaccinations on that date in his affidavit. *Id.* (citing Pet. Ex. 14; Pet. Ex. 15).

Respondent filed a response on January 15, 2015 along with an article from the American College of Obstetricians and Gynecologists titled "2019 Immunization Coding for Obstetrician-Gynecologists." Respondent's Exhibit ("Resp. Ex. A"). ECF No. 46; ECF No. 47. Respondent explained that the article shows that vaccinations are required to be billed in two parts – one is a charge for the vaccine itself and the second is a for the "administration of the vaccine." ECF No. 46 at 2. As reflected in the BlueCross BlueShield documents and other evidence submitted, the code "90471" and the accompanying $30.00 charge is for the "administration" of a vaccine and the $100.00 charge was the cost of the Pneumococcal 23 vaccine. Therefore, respondent maintained that the records filed did not support petitioner's receipt of a flu vaccine in Dr. Lima's office on December 6, 2014, but rather that only a Pneumococcal 23 was administered on that date. ECF No. 46.

### III.  The Parties' Positions

#### A. Petitioner's Motion

---
[4] The affidavit was provided in both English and Spanish. It is not known who provided the translation.

7

Petitioner argued that Dr. Lima's vaccine chart reflects both the flu and pneumococcal 23 vaccines being given on December 6, 2014. Dr. Lima's vaccine chart also contains the lot number and manufacturer for the flu vaccine, which Dr. Lima would not have documented if the vaccine was given elsewhere, further supporting his receipt of the flu vaccine on that date at Dr. Lima's office. Motion at 1 (citing Pet. Ex. 14 at 2). Petitioner affirmed receipt of both the flu and pneumococcal vaccines at Dr. Lima's office on December 6, 2014, and stated that this was the only place that he would have received the influenza vaccine. Motion at 1; Pet. Ex. 15.

Additionally, when petitioner presented for care thereafter, petitioner was "consistently telling his health care providers that he received the influenza vaccine approximately one month before his hospitalization, which is consistent with the December 6, 2014 office visit to Dr. Lima." Motion at 1-2.

According to petitioner, other than Dr. Lima's December 6, 2014 record mentioning that he received the flu vaccine at work, there is no other record that documents petitioner receiving the flu vaccine anywhere but Dr. Lima's office, and "Dr. Lima's own medical records contradict each other." Motion at 2.

### B. Respondent's Response

Respondent argued that petitioner has provided neither sufficient documentary proof that an influenza vaccine was administered to petitioner on December 6, 2014 or an adequate explanation as to why substantiating records are unavailable. Response at 17.

Respondent argued that petitioner "has shifted his position throughout this litigation regarding the documentation that purportedly establishes that he received a flu vaccination on December 6, 2014." Response at 17. Initially, in a status report filed on November 6, 2020, petitioner argued that the insurance claims forms from Dr. Lima's office for December 6, 2014 contained the billing code 90741, reflecting receipt of the flu vaccine. *Id*. However, after the filing of respondent's January 15, 2021 status report and literature showing that the billing code 90741 represents the "administration" charge required to accompany a separate vaccine charge, and the records also reflected the charge for the pneumococcal 23 vaccine (billing code 90732), petitioner "backed away from [this] claim." *Id.* at 17-18. Petitioner then argued that he was unable to find any additional evidence that demonstrated that he received the flu vaccine on a date other than December 6, 2014. *Id*. at 18.

Respondent argued that petitioner is asking the Special Master to credit Dr. Lima's record, Petitioner's Exhibit 14, while ignoring the discrepancies within that exhibit itself, as well as those found when considering Dr. Lima's office record documenting that petitioner received a flu vaccine "at work." Response at 19. Petitioner acknowledged the contradiction in Dr. Lima's records in his Motion, "thus undercutting his own reliance on those records to support his position in this case." *Id*.

Respondent added that despite over three years of record development, petitioner has failed to identify any additional records that clarify whether petitioner actually received the flu vaccine at Dr. Lima's office or at his place of work, citing to the Court's May 6, 2021 order noting the

8

same. Response at 19-20 (citing ECF No. 53 at 2). Respondent argued that to conclude petitioner received the flu vaccine based on the current evidence and the arguments advanced in petitioner's Motion would require speculation, which is not permitted based on *Centmehaiey*. *Id*. at 20 (citing *Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 624 (1995)).

Respondent further noted that when it was suggested that Dr. Lima be deposed, petitioner's counsel responded that "would likely be unfruitful." Response at 20 (citing ECF No. 56). Therefore, petitioner "implicitly acknowledged the inconsistent evidence that he now relies upon in his Motion, and implicitly acknowledged that his proffered evidence falls short of establishing by a preponderance of the evidence that he was administered a flu vaccination on December 6, 2014." Response at 20.

Respondent also argued that petitioner's supplemental affidavit, in which he affirmed receiving both the flu and pneumococcal vaccines at Dr. Lima's office on December 6, 2014, should not be credited because his statements are inconsistent with the contemporaneous medical records. Response at 21. Respondent pointed out that when petitioner presented to the ER on January 4, 2015, he "contemporaneously and only mentioned and attributed his symptoms to the *pneumonia vaccine* he had recently received, and made no mention of the flu vaccine." This was raised by the Special Master during a status conference. *Id*. (citing Pet. Ex. 8 at 3); *see* ECF No. 23.

Respondent added that Dr. Chappidi's January 26, 2015 office record noting the flu vaccine in relation to petitioner's GBS, and any other record referring to the flu vaccine prior to the onset of petitioner's illness, was information provided by petitioner and is therefore speculative. Response at 21-22

In conclusion, respondent argued that the record contains "significant evidence that negates the administration of a flu vaccination at Dr. Lima's office on December 6, 2014." Response at 22. Based on the record as whole, petitioner has not established proof of administration of a flu vaccine on December 6, 2014. *Id*.

The remainder of respondent's arguments relate to petitioner's alleged injury, which is not being addressed by this Ruling.

### C. Petitioner's Reply

Petitioner replied that he had provided documentation to support that he received both the flu and pneumococcal vaccines at Dr. Lima's office on December 6, 2014, including an affidavit that attests to this under oath. Reply at 1; Pet. Ex. 15. Petitioner argued that the Court should consider his affidavit as evidence that he received both the flu and pneumococcal vaccinations at Dr. Lima's office and not elsewhere. He cited to *Epstein*, which held that lay witness testimony can constitute evidence of vaccine administration when there is other corroborating evidence. Reply at 2 (citing *Epstein v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 467, 478 (1996)). Dr. Lima's medical records, specifically the vaccination record, support petitioner's receipt of the flu vaccine in Dr. Lima's office on December 6, 2014, because it included the lot number, expiration

9

date, and the manufacturer of the flu vaccine, which serves as corroborating evidence in support of petitioner's affidavit as outlined in *Epstein*. *Id*.

The remainder of petitioner's reply addresses his alleged injury, which is not at issue in the Motion before the Court.

### IV.    Legal Standard

Under the Vaccine Act, providing proof of vaccination is a threshold matter in order to prevail under either a "Table" injury in which causation is presumed, or an "off-Table" injury, in which petitioner identifies a causal link between the vaccine and the alleged injury. § 300aa–11(c)(1)(A) and (B). Petitioner must first prove by a preponderance of the evidence that he "received a vaccine set forth in the Vaccine Injury Table." § 300aa-11(c)(1)(A). A special master shall assess "the record as a whole" and may not "find that a petitioner received a vaccine 'based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion.'" *Rich v. Sec'y of Health & Human Servs.*, No. 12–742V, 2013 WL 4476751 (Fed. Cl. Spec. Mstr. July 26, 2013); (§ 300aa–13(a)(1)).

Although contemporaneous documentation of vaccination from a healthcare provider is the best evidence that a vaccination occurred, it is not absolutely required in all cases. *Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 621 (1995) ("[t]he lack of contemporaneous documentary proof of a vaccination ... does not necessarily bar recovery"). Indeed, as Vaccine Rule 2 states, "[i]f the required medical records are not submitted, the petitioner must include an affidavit detailing the efforts made to obtain such records and the reasons for their unavailability." Vaccine Rule 2(c)(2)(B)(i). Furthermore, if a petitioner's claim is "based in any part on the observations or testimony of any person, the petitioner should include the substance of each person's proposed testimony in a detailed affidavit(s) supporting all elements of the allegations made in the petition." Vaccine Rule 2(c)(2)(B)(ii).

Special masters have thus found that vaccine administration occurred even in the absence of direct documentation. In such cases, preponderant evidence was provided in the form of other medical records and/or witness testimony. For example, corroborative, though backward-looking, medical notations have been found to tip the evidentiary scale in favor of vaccine receipt. *Lamberti v. Sec'y of Health & Human Servs.*, No. 99–507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007) (finding multiple medical record references to vaccine receipt constituted adequate evidence of administration); *Groht v. Sec'y of Health & Human Servs.*, No. 00–287V, 2006 WL 3342222, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2006) (finding a treating physician's note—"4/30/97—Hep B. inj. # 1 (not given here) (pt. wanted this to be charted)"—to be sufficient proof of vaccination); *Figueroa v. Sec'y of Health & Human Servs.*, No. 10-705V, 2014 WL 6819494, at *4 (Fed. Cl. Spec. Mstr. Nov. 7, 2014) (finding sufficient proof of vaccination where subsequent medical records documented that petitioner consistently reported receiving the subject flu vaccination); *Beckner v. Sec'y of Health & Human Servs.*, No. 11-668V, 2013 WL 3353993, at *8 (Fed. Cl. Spec. Mstr. Apr. 25, 2013) (finding sufficient proof of vaccination where a medical record created approximately a month after petitioner's alleged receipt of the subject vaccine documented petitioner's report of his vaccination and the statement was made "for the purpose of facilitating diagnosis and treatment of his condition…[and] the vaccination was received in such

close temporal proximity to petitioner's admission that misremembering is unlikely"). *But see Matthews v. Sec'y of Health & Hum. Servs.*, No. 19-414V, 2021 WL 4190265 (Fed. Cl. Spec. Mstr. Aug. 19, 2021), *mot. for rev. den'd*, 157 Fed. Cl. 777 (2021) (finding insufficient proof of vaccination where petitioner's numerous contemporaneous medical records, petition, and subsequent filings were inconsistent in reporting whether he received a flu vaccine that season and identifying the time at which he allegedly received the vaccine).

In addition to corroborative medical records, witness testimony can also help establish a sufficient basis for a finding that a vaccine was administered as alleged. *Alger v. Sec'y of Health & Human Servs.*, No. 89–31V, 1990 WL 293408, at *2, 7 (Fed. Cl. Spec. Mstr. Mar. 14, 1990) (oral testimony from a parent and the doctor who administered the vaccine was "more than adequate to support a finding that the vaccine was administered"). The Court of Federal Claims has recognized precedent supporting the proposition that a court may base a finding of vaccination on lay testimony. *Epstein v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 467, 478 (Fed. Cl. 1996); *see also Brown v. Sec'y of Health & Human Servs.*, 18 Cl. Ct. 834, 839–40 (1989) (proof of vaccination in the absence of contemporaneous medical records established via testimony of petitioner's parent, her personal calendar, and evidence of a charge for the vaccine on the physician's billing statement), *rev'd on other grounds*, 920 F.2d 918 (Fed. Cir. 1990*); Gambo v. Sec'y of Health & Human Servs.*, No. 13-691V, 2014 WL 7739572, at *3 (Fed. Cl. Dec. 18, 2014).

## V.  Discussion

Petitioner alleged that he received a flu vaccine on December 6, 2014, at the office of his primary care physician, Dr. Lima.[5] Petitioner filed evidence to support his claim including Dr. Lima's office record, two affidavits, insurance billing records, and an article on vaccine billing and coding. However, respondent countered that the documentation provided is insufficient to support proof of administration of a flu vaccination. As discussed below, based on a review of the evidence as a whole, petitioner has established that he more likely than not received a flu vaccine on December 6, 2014 in Dr. Lima's office.

Petitioner relies primarily on his supplemental affidavit, in which he affirmed that he received both the flu and pneumococcal vaccines in Dr. Lima's office on December 6, 2014, and the vaccination charts from Dr. Lima's office. One of these charts includes the lot number, manufacturer, and expiration date for the December 6, 2014 flu vaccine. *See* Motion at 2; Pet. Ex. 15; Pet. Ex. 14.

Although proof of vaccination is a requirement for Program cases, a "lack of contemporaneous, documentary proof of a vaccination does not necessarily bar recovery." *Centmehaiey*, 32 Fed. Cl. at 621. There must, however, be some medical documentation or other corroborating evidence to support petitioner's claim. In addition to Dr. Lima's vaccination charts and petitioner's affidavit, petitioner provided other medical records from later in his treatment that he argued support his receipt of the flu vaccine.

---

[5] Petitioner submits in his Motion that Dr. Lima's office is "the only place that Petitioner states in his affidavit that he would have received the influenza vaccine." Motion at 1; *see* Pet. Ex. 15.

11

Specifically, at his initial presentation to the ER on January 4, 2015, petitioner only reported receipt of a pneumonia vaccine prior to the onset of his symptoms. Pet. Ex. 8 at 3. However, he thereafter reported and his medical records include references to his receipt of a flu vaccine and/or both the flu vaccine and the pneumonia vaccine. On January 26, 2015, Dr. Chappidi's record included an illness "which occurred one month after receiving the influenza vaccine."[6] Pet. Ex. 6 at 2. Dr. Gutierrez's record from February 13, 2015 included that petitioner reported that he felt his symptoms "may have all started after getting his Flu/Pneumonia shot last 12/2014." Pet. Ex. 3 at 2. On August 1, 2016, Dr. Yu's record documented that petitioner reported "[a]fter he had a flu shot, he started having tingling and numbness spreading up his legs to his waist." Pet. Ex. 7 at 2. On January 26, 2017, Dr. Camacho's record noted that petitioner reported he "has GBS, 2 yrs ago @ St Mary he received flu and pneumonia vaccine at the same time." Pet. Ex. 5 at 4-7.

The existing case law supports that corroborative, though backward-looking, medical notations have been found to tip the evidentiary scale in favor of vaccine receipt. *Lamberti*, No. 99–507V, 2007 WL 1772058, at *7. Further, a single notation of a statement made in the process of seeking medical care can satisfy the proof of vaccination requirement. *See Groht*, No. 00-287V, 2006 WL 3342222 at *2.[7]

Here, there is no question that petitioner presented to Dr. Lima on December 6, 2014. The record from that date includes "PROVIDED VACCINATION 1 dose of Pneumovax 23, 0.5 ml IM in the Right Deltoid (Mfg. MERCK lot no. K010466, expires 03/23/2016) . . . PROVIDED VACCINATION (Given Elsewhere) influenza, at work." The record also lists billing codes 99215, 36415, 90732, 90471, and 94010 representing charges for what was performed at that visit including administration of a vaccine, 90471, and 90732, the code associated with pneumococcal 23 vaccine. Pet. Ex. 2 at 9. There are no codes for administration of a second vaccine or for influenza vaccine.

However, Dr. Lima's medical records also include two vaccination charts. One, which was contained in his office records, titled "Shots completed for Vazquez, Ignacio…" and contains "Fluvirin 12/06/2014" and "Pneumovax 23 12/06/14", both under the column for Dose 1. Pet. Ex. 2 at 68. A second, filed separately also titled "Shots completed for Vazquez, Ignacio…", which contains an "Influenza" vaccine listed under the column for "Dose 3", with a date of December 6, 2014. This entry is followed by "Lot# 1411101 Exp. 4/1/15 Manufacturer: Novartis", all of which is handwritten. At the bottom of the document, a line of typed text states that it was printed by Alex Lima, MD, on February 5, 2018. An illegible signature is contained on the document. Pet. Ex. 14.

There are certainly some questionable occurrences in this case, such as the appearance of a second vaccination chart listing a lot number, manufacturer, and expiration date for the flu

---

[6] The same note is included in Dr. Chappidi's record from June 11, 2015. Pet. Ex. 6 at 3.

[7] In a recent non-precedential opinion, the Federal Circuit found that the Special Master's determination that petitioner's testimony regarding proof of vaccination in the absence of corroborating medical records was sufficient to satisfy proof of vaccination was within the sound discretion of the Special Master because it was based on evidence in the record and was not wholly implausible. *Hinton v. Sec'y of Health & Human Servs.*, No. 2023-2161, 2025 WL 763153 (Fed. Cir. Mar. 11, 2025).

vaccine that was not contained in Dr. Lima's original medical record when filed. Petitioner did not provide any explanation for these discrepancies from Dr. Lima or his office staff. Further, petitioner's counsel represented that petitioner was unable to locate any records from his employer that show the administration of the flu vaccine. *See* ECF No. 54. Petitioner's evidence is troubling at best. At worst, this case represents a "close-call", and in "the Vaccine Program, petitioners are accorded the benefit of close calls." *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-1045V, 2021 WL 4205313, at *4 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (citing *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Spec. Mstr. Aug. 29, 2013)). Considering all the evidence, specifically the vaccination chart listing an "Influenza" vaccine along with the lot number, manufacturer, and expiration date next to a date of December 6, 2014 and petitioner's affidavit affirming receipt of both the flu and pneumococcal vaccines on December 6, 2014, I find that petitioner received a flu vaccination on December 6, 2014.

## VI.     Conclusion

Based upon my review of the record as a whole, I find that petitioner has established by preponderant evidence that he received a flu vaccination on December 6, 2014. Petitioner has therefore satisfied his burden in demonstrating the receipt of a vaccine on the Vaccine Injury Table. *See* 42 U.S.C. § 300-aa11(C)(1)(A) and (B).

The Court will contact the parties to schedule a status conference to discuss how the matter should proceed.

**IT IS SO ORDERED.**

<u>**s/ Mindy Michaels Roth**</u>
Mindy Michaels Roth
Special Master

13